Benjamin F. HAAS and Addie R. Haas, Petitioners-Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.

No. 352, Docket 24451.

United States Court of Appeals Second Circuit.

Argued June 3, 1957.

Decided Oct. 7, 1957.

Hand, Circuit Judge, dissented.

**488**

Weil, Gotshal & Manges, New York City (Theodore Tannenwald, Jr., Sylvan Gotshal, Ira M. Millstein, Benjamin Clark, New York City, of counsel), for petitioners-appellants.

Charles K. Rice, Asst. Atty. Gen., Ellis N. Slack, Lee A. Jackson, Melvin L. Lebow, Attys., Dept. of Justice, Washington, D. C., for respondent-appellee.

Before HAND, LUMBARD and WATERMAN, Circuit Judges.

WATERMAN, Circuit Judge.

Petitioners, husband and wife, seek a reversal of the Tax Court decision sustaining the Commissioner's disallowance of a loss deduction claimed by them for the years 1948, 1949 and 1950.

In 1933 Mr. Haas organized Oxford Looms, Inc., a woolen mill. Although he had all of its authorized common stock, consisting of 500 shares, issued to his daughter as a gift, the operation and management of Oxford, since the time of its incorporation, has been under his direct supervision and control; and both Haas and his wife, from the very beginning, have advanced considerable sums of money to it in the form of loans. In 1936 Oxford issued to the petitioners 500 shares of non-voting 6% cumulative preferred stock in consideration for the cancellation of the then existing debts created by advances made up to that time. Petitioners thereafter continued to advance money to the corporation in the form of loans until 1948. In that year, Mr. Haas and Oxford entered into an agreement, which taxpayer contends to have been the entry upon a joint venture, whereby Mr. Haas would provide the working capital for the mill and the mill corporation would continue to provide its existing equipment and facilities. The profits and losses arising from this venture were to be divided equally between the parties, but Mr. Haas was to be repaid all advances which he had made before there was to be any division of profits. In 1949 a similar agreement was entered into except that Mrs. Haas was also to advance money, and both petitioners were to bear all the losses, but were still to divide any profits with Oxford on a 50% basis after repayment of advances. The corporation continued to operate at a loss as it had done for most of its existence. On their tax returns for the years in issue, the petitioners claimed losses arising from

the operation of Oxford. The Commissioner determined deficiencies based upon his disallowance of the losses claimed.

On these facts, the Tax Court concluded "that the profit and loss arrangements entered into between petitioner [sic] and Oxford were not bona fide." We understand this conclusion to mean that the Tax Court adjudged that Mr. and Mrs. Haas did not, in fact, pay the losses of Oxford that they sought to deduct on their income tax returns as having been paid by them, or if actually paid, that these payments were secretly repaid, or that the losses were otherwise covertly recouped. We do not believe this conclusion is a justifiable one.

Except for the fact that the "joint venture" did not keep separate books or file an information return, there is no evidence in the record to support the conclusion that the agreements between Oxford and Mr. and Mrs. Haas reported to the Commissioner were not good faith transactions. Indeed, evidence relied upon by the Commissioner to sustain the Tax Court's decision indicates that the parties did in fact intend that petitioners should bear all the losses arising from the conduct of Oxford's operations. Mr. Hass testified at one point that his purpose in entering into the joint venture was to protect his wife and daughter against losses, a purpose which is inconsistent with the contention that the agreement was a mere sham.

■ The Tax Court also concluded that "petitioner's [sic] attempt to claim the corporation losses as his own was a plan for improper tax avoidance." Insofar as this conclusion indicates that the Tax Court based its decision upon a consideration of whether the petitioners entered into "the profit and loss arrangements" in order to minimize their taxes, we hold that the conclusion was irrelevant to the issues before it. For the reasons stated in Judge Medina's opinion in Gilbert v. Commissioner, 2 Cir., 248 F.2d 399, we hold that determination of whether the profit and loss arrangements were effective to minimize the petitioners' taxes depends upon whether those agreements effected any economic consequences in the business conducted by Oxford, and does not depend upon the results of an inquiry into the motives of the petitioners.

■ Determination of whether petitioners can claim as a deduction the losses sustained between 1948 and 1950 depends upon whether the agreements of 1948 and 1949 created a "joint venture" between Oxford and them. A "joint venture" is, for tax purposes, equivalent to a partnership. Section 3797(a) (2), Internal Revenue Code of 1939, 26 U.S.C. § 3797(a) (2). A family partnership is recognized for tax purposes if "the partners joined together in good faith to conduct a business * * *." Commissioner of Internal Revenue v. Culbertson, 1949, 337 U.S. 733, at pages 744–745, 69 S.Ct. 1210, at page 1215, 93 L.Ed. 1659. In Culbertson, as in the present case, the existence of the business antedated the formation of the partnership. But in that case there was no doubt that a change had occurred in the conduct of the business. The control of the enterprise had changed hands. That fact distinguishes Culbertson from this case, for here the control of the enterprise did not change hands. For many years, petitioners made substantial advances to Oxford. Mr. Haas always controlled the policies to Oxford and devoted his time and effort to its management. The agreements entered into in 1948 and 1949 may have indeed created rights and duties between the parties to those agreements; and also may have created rights and duties between the contracting parties, on the one hand, and third persons dealing with the contracting parties on the other. Nevertheless these agreements in no way affected the control of Oxford or the operation of the business carried on by Oxford.

The situation here is akin to that in Gregory v. Helvering, 1935, 293 U.S. 465, 55 S.Ct. 266, in which, although the newly created corporation undoubtedly existed, the Supreme Court held that the corporate entity must be disregarded for tax purposes because it did not serve

"a. business purpose" and was, therefore, outside the intent of the statute. The interpretation which this court gave to Gregory in Kraft Foods Co. v. Commissioner, 1956, 232 F.2d 118, 128, is of particular significance. "[It] hold[s] that transactions, even though real, may be disregarded * * * if they take place between taxable entities which have no real existence." We follow that interpretation here.[1]

█ Prior to 1948 the losses sustained were admittedly the losses of the corporation. Since the creation of the joint venture did not change the functioning of Oxford Mills, the control of its operations, or affect its ownership, the Tax Court will have to determine on remand whether the change in legal relations effected by the profit and loss agreements of 1948 and 1949 was a sufficient basis upon which to shift the losses from Oxford to the petitioners.

We remand the cause to the Tax Court for further proceedings there in accordance with the views expressed in this opinion.

HAND, Circuit Judge (dissenting).

For the reasons I have stated in Gilbert v. Commissioner, 2 Cir., 248 F.2d 399, I do not agree with the Tax Court's finding that "the profit and loss arrangements entered into between the petitioner and Oxford were not bona fide." This the court followed by saying that the "attempt to claim the corporation's losses as his own was a plan for improper tax avoidance." These findings do not seem to me to dispose of the appeal. I would, therefore, also remand the case, although for the same finding, *mutatis mutandis*, that I have suggested in the Gilbert case.

Although it is hard to believe that the Tax Court will make any finding other than that the petitioners did not suppose

that the form they chose appreciably affected any beneficial interests that they had in the venture, other than taxwise; nevertheless it is that court and not we that must make the finding, if the petitioners so desire.

---

[1] See also Kocin v. United States, 2 Cir., 1951, 187 F.2d 707, where the Commissioner disallowed a business expense deduction claimed by the taxpayer corporation for commissions paid to a partnership composed of stockholders, officers and employees of the taxpayer. The

partnership was organized to take over the selling function previously performed by the taxpayer. We sustained the Commissioner's determination, relying on Gregory v. Helvering, because "the partnership served no business purpose." 187 F.2d 707, 708.